IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ERIC D. CONNER,

    Plaintiff,

    v.                      Case No. 17-CV-0948

STACY L. HOEM, SCOTT RUBIN-ASCH, ANGELA MINK, JOLINDA WATERMAN, SANDY MCARDLE, AND NATHAN BETHEL,

    Defendants.

## DECLARATION OF STACEY HOEM, PH.D.

I, **STACEY HOEM, Ph.D.**, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I make this declaration based on my personal knowledge and review of the records maintained in the ordinary course of business at the Wisconsin Secure Program Facility (WSPF).

2. I am currently employed by the Wisconsin Department of Corrections (Department) as a Licensed Psychologist at WSPF. I have held this position since September 7, 2006.

3. As a Licensed Psychologist, my duties include, but are not limited to: mental health screenings; conducting brief individual counseling and

mental health monitoring; providing crisis intervention and prevention; and providing individual psychotherapy, group therapy, and psychological assessments to inmates needing mental health services.

4. Eric Conner (DOC#420475) is an inmate currently housed at WSPF.

5. On March 3, 2017, I placed Conner on observation status around 9:00 a.m. after he attempted to hang himself while outside during recreation. When I spoke with him, he indicated to me that he was having thoughts of self-harm and that he could not be in prison any longer.

6. Observation status is a very restrictive status used for the purpose of preventing an inmate from inflicting harm upon himself or someone else. Inmates in observation status are checked on by unit staff every 15 minutes throughout the day and night. Psychological Services Unit (PSU) staff also conduct daily rounds of inmates on observation status.

7. During daily rounds by PSU staff, the inmate's behavior and mental health condition are evaluated to determine whether there is still a risk to the inmate's safety or the safety of others. The inmate's property can also be reviewed during these contacts to determine if property should be added or removed.

8. When initially placed on observation status, inmates are generally given the least amount of property as to minimize the risk of self-harm/suicide.

9. On March 3, 2017, Conner was initially only allowed to have a segregation mattress (approximately one inch thick rubber mattress), toilet paper, and styromeals (all meals served in his cell on a Styrofoam tray without utensils). He had a history of self-harming behaviors prior to this placement, including attempts at hanging himself, so I did not want him to have a segregation smock right away as that material could be used in another hanging attempt.

10. Prescription medications are not authorized to be kept on an inmate's person while in observation status as they can be used for self-harm. Inmates who are prescribed medications or other items from a physician are able to access them through Health Services Unit (HSU) staff.

11. When I initially placed Conner in clinical observation status on March 3, 2017, he did not talk to me about wanting his medicated creams and lotions.

12. I was informed that Conner brought up the issue of needing his creams and lotions at some point shortly after he was placed on clinical observation status. Conner refused to talk to PSU about this issue, but would later tell unit staff that he was supposed to get his creams in his cell, at

3

which point I placed a handwritten note on his cell front stating that he should not be given his creams and lotions in his cell, as it was not approved property.

13. I put the restriction on his cell because I did not want security staff or the unit manager allowing him to possess his creams and lotions while in observation status should he ask for them. He had a history of refusing to speak with PSU staff, but would then talk to security and unit staff seeking more property. This restriction was put in place for his own safety, as I was aware that he had previously used his creams/lotions to cover the camera in his cell.

14. Covering a camera is a serious security risk as staff are unable to observe what is happening inside the cell. The primary purpose of observations status is to closely monitor the inmates so they are not engaging in self-harming behaviors. Covering their camera impedes staff's ability to monitor them and ensure their safety.

15. Conner was given a security smock on several occasions throughout his placement in observation status, the first time being on March 4th; however, his segregation smock was removed multiple times due to misuse. He would hide under it so staff could not see what he was doing, and he also threatened to hang himself with it, at which point it was removed.

Once his behavior became appropriate, his segregation smock would be returned to him.

16. Conner was released from observation status on April 20, 2017 after the March 3, 2017 placement, per Psychologist Supervisor Scott Rubin-Asch. As one of the psychologists in the PSU, I participated in several of his assessments in evaluating his mental health status throughout his placement.

*Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.*

Executed on August 15, 2018.

s/ Stacey Hoem, Ph.D.
Stacey Hoem, Ph.D.