United States District Court
Eastern District OF Wisconsin

Eric D. Conner,

       Plaintiff,      REPLY

V.

            Case No. 17-CV-948

Prison Medical Provider;  Mag. Judge David E. Jones

Sandy McArdle,

        Defendant.

---

Plaintiff's Reply To Defendant's
McArdle Proposed Findings of Fact.

---

Defendant's (PFOF) - Paragraphs: 1-67

Plaintiff's Reply paragraphs: 1-67

Dated this   day of August, 2018

Eric D. Conner      (608)375-5656
#420475
Pro Se - Litigant
Wisconsin Secure Program Facility
P.O. Box 1000
Boscobel, Wisconsin 53805-1000

United States District Court
Eastern District Of Wisconsin

Eric D. Conner,
        Plaintiff-Respondent,

V.

                                    Case No. 17-CV-948
Prison Medical Provider,        Mag. Judge David E. Jones
Sandy McArdle,
                Defendant.

---

Plaintiff's REPLY To Defendant
McArdle's Proposed Findings of Facts.

---

I, Eric D. Conner, Pro se-Plaintiff, declare
under Penalty of Perjury Statute, 28 U.S.C.
§ 1746, that Plaintiff's (REPLYS) to the
defendant McArdle's Proposed Findings of
Facts are true and correct and based
on my personal knowledge and experience.
Plaintiff rewrites the defendant McArdle's
Proposed Findings of Fact Verbatim and
Replys as Follows:

1.) - Plaintiff Eric Conner ("Mr. Conner")
is an inmate at the Wisconsin Secure Program

(1)

Case No. 17-CV-0948

## Eastern District Of Wisconsin

Facility ("WSPF") in Boscobel, Wisconsin at all times relevant to this action. (ECF No. 16 at Par... 1.)

Response : No Dispute.

2.) - Defendant Saundra McArdle is an advanced practice nurse practitioner ("APNP") and has been since February 1999. Ms. McArdle has been working at WSPF as an APNP on a locum tenens assignment since January 2017. (McArdle Decl. Par...4.)

Response : No Dispute.

3.) - On July 11, 2017, Mr. Conner Filed his Complaint specifically asserting that his Eighth Amendment Rights were violated while he was on clinical observation status from March 2017 through April 2017 at WSPF (ECF No. 1.)

Response : No Dispute

4.) - The Court screened the Complaint and determined the claims made, while all occurred while Mr. Conner were in clinical observation status, were not all related and did not meaningfully overlap. (ECF No. 14)

## Eastern District Of Wisconsin

The Court Ordered Mr. Conner to File an Amended Complaint which Contained only related Claims. (Id)

Response : No Dispute.

5.) — Mr. Conner Filed an Amended Complaint on September 29, 2017 asserting Claims For deliberate indifference against Defendants, including Ms. McArdle arising out of the alleged Failure to provide his medicated creams and lotions and care while he was on Clinical Observation Status from March 2017 through April 2017. (ECF No. 16)

Response : No Dispute.

6.) — The Court Screened the Amended Complaint and allowed Mr. Conner to proceed on his Eighth Amendment deliberate indifference Claims. (ECF No. 20.)

Response : No Dispute.

7.) — Plaintiff Eric Conner ("Mr Conner") is an inmate at the Wisconsin Secure Program Facility ("WSPF") in Boscobel, Wisconsin at all times relevant to this action. (ECF No.

(3)

16 at Par... 1.)

   Response : NO Dispute.

8.) - Ms. McArdle has been a nurse Practitioner
since February 1999. She received a masters
in Nursing From the University of South
Carolina in June 1998. (McArdle Decl. Par.
2.)

   Response : NO Dispute.

9.) - Ms. McArdle is licensed as both a
registered nurse and an advanced practitioner
nurse prescriber ("APNP") through the state
of Wisconsin and is also board certified as
a Family nurse Practitioner through the American
Nurses Credentialing Center. (McArdle Decl.
Par... 2.)

   Response : NO Dispute.

10.) - At all times relevant to this matter,
and to this day, Ms. McArdle has been Contracted
with Maxim Physician Resources, LLC as an
advanced practice nurse prescriber ("APNP").
(McArdle Decl. Par... 2.)

   Response : NO Dispute.

(4)

## Eastern District Of Wisconsin

11.) - Ms. McArdle has been working at Wisconsin Secure Program Facility ("WSPF") as an APNP on a locum tenens assignment since January 2017. (McArdle Decl. Par. 2.)

Response : No Dispute

12.) - Before Mr. Conner was placed on Clinical Observation Status, Ms. McArdle saw Mr. Conner on January 4, 2017. (McArdle Decl. Par. 10, Ex. 4, P. 5-6.)

Response: No Dispute, but adds that this January 4, 2017, appointment was scheduled by Nurse Anderson on 12-1-16 at 1600 hrs. who evaluated Mr. Conner's feet this day. Therefor, Ms. McArdle knew before she seen Mr. Conner on January 4, 2017, what the appointment was about. (PPFOF dkt.#32. Ex.#13.)

13.) - On that date, Mr. Conner complained of cracking skin on his feet and Keloids on the back of his head and neck after the area was shaved, and knee pain. (McArdle Decl. Par. 10, Ex.

(5)

A, P. 5-6.)
Response: No Dispute

14.) - Mr. Conner did not have pain when he rotated his left knee and he did not have increased warmth in his knees, demonstrating that there was likely no swelling in his knees. (McArdle Decl. Par. 10, Ex. A, P. 5-6.)
Response: No Dispute

15.) - Mr. Conner had two raised 1 centimeter keloid bumps on the back of his head which were not warm to the touch. He also had dry cracked skin on his feet. (McArdle Decl. Par. 10, Ex. A, P. 5-6.)
Response: No Dispute

16.) - Ms. McArdle diagnosed him with dry skin, a callous on his foot, keloids on the back of his neck, and knee pain. (McArdle Decl. Par. 10, Ex. A, P. 5-6.)
Response: No Dispute.
Plaintiff further adds that McArdle also

(6)

Eastern District Of Wisconsin

that the "Minertin Cream" was For his Feet.

17.) - He was prescribed Minertin cream, PRN, which means "as needed", a pumice stone For his Feet if allowed by security or else to be used at the HSU, and bacitracin oint- ment For his keloids. Ms. McArdle also dis- cussed possible injections to manage the keloids, and ordered an x-ray and Physical therapy for his knee pain. (McArdle Decl. Par. 10, Ex. A, P. 5-6.)

> Response: No Dispute.

18.) - Ms. McArdle did not hear from Mr. Conner again regarding his keloids until approximately March 2018. Because the keloids were not serious or endan- gering Mr. Conner's health, the choice was left to Mr. Conner on when and how to treat the keloids and for him to initiate treatment. (McArdle Decl. Par. 11.)

> Response: Disputes.

First, McArdle wrote on January 4, 2017, visit that " Return to HSU for evaluation

Eastern District Of Wisconsin

of treatment". (McArdle Ex. A, P. 5.) Mr. Conner returned to Hsu for evaluation of his keloids, dry skin, etc... on February 14, 2017, in which he seen McArdle. He asked for the injections into his keloids like he was receiving at WCI. McArdle never documented this. (McArdle Ex. A, P. 5.)

Second, Conner's keloids were /are serious medical condition. Mr. Conner was utilizing the prescribed medicated cream for his keloids, which at times were becoming enlarge. It wasn't until Conner was placed on observation status and denied this cream for his keloids that he start to experience pain and discomfort and complained. (Plaintiff's Memorandum of Law, P. 4-5)

19.) - Mr. Conner was placed on clinical observation status on February 13, 2017. at 5:50 p.m. for attempting to make a noose and hang himself. He was provided with minimal property due to his attempt to harm himself by making a noose. (McArdle Decl. Par.. 5, Ex. A, P. 9.)

(8)

(Case No. 17-CV-0948)

## Eastern District Of Wisconsin

Response: No Dispute. Futher adding, Mr. Conner was allowed access to his prescribed medicated creams and Lotion.

20.) — Observation status is a very restrictive status used for the purpose of preventing an inmate from inflicting harm upon himself or someone else. Inmates in observation status are checked on by unit staff every 15 minutes throughout the day and night. Psychological services unit (PSU) staff also conduct daily rounds of inmates on observation status. (Hoem Decl. Par. 6.)

Response: No Dispute

21.) — During daily rounds by PSU staff, the inmate's behavior and mental health condition are evaluated to determine whether there is still a risk to the inmate's safety or the safety of others. The inmate's property can also be reviewed during these contacts to determine if property should be added or removed. (Hoem Decl. Par. 7.)

Response: No Dispute.

Eastern District Of Wisconsin

22.) — When initially placed on Observation Status, inmates are generally given the least amount of property as to minimize the risk of Self-harm/Suicide. (Hoem Decl. Par. 8.)

Response: No Dispute.

23.) — Prescription medications are not authorized to be kept on an inmate's person while in Observation Status as they can be used for Self-harm. Inmates who are prescribed medications or other items from a physician are able to access them through Health Services Unit (HSU) Staff. (Hoem Decl. Par. 10.)

Response: Plaintiff Objects as to Prescription medications not being authorize to be kept on person while in Clinical Observation Status. Mr. Conner is not aware of any DAI or WSPF policy that States Such; nor have McArdle provided this Court with one. No Dispute as to inmates with prescribed medications accessing them during medication pass-out times.

24.) — Despite the fact that Mr. Conner was not allowed to personally possess creams and lotions, Ms. McArdle was aware that Hsu made sure to offer creams and lotions to Mr. Conner when needed. Sometimes, when offered, Mr. Conner would refuse. (McArdle Decl. Par. 24.)

Response: Disputes.

Mr. Conner start receiving out-of-cell foot-care on March 15, 2017. (McArdle Ex. A, P. 43.) Mr. Conner never received out-of-cell treatment for his skin or keloids despite his multipal requests/complaints. Mr. Conner was denied access to his creams/lotion during medication pass up until April 4, 2017. (McArdle Ex. A, P. 43; Ex. A, P. 75, 76.) Futhermore, Plaintiff was refusing some out-of-cell footcare due to the cream coming off onto the cement floor immediately after it was applied. Plaintiff didn't have any footwear: shoes, sandles, orange crocks, socks to protect his feet and keep the cream on bottom of feet. Had to walk around barefoot on a cold cement floor 24/7. (McArdle Ex. A, P. 45.)

(11)

Eastern District Of Wisconsin

25.) - Ms. McArdle was not personally involved in providing Mr. Conner with out-of-cell access to creams and lotions while on clinical observation status, as nurses handle providing inmates with care on clinical observation status, unless an appointment is schedule with an APNP during that time. (McArdle Decl. Par. 23.)

Response: Disputes. McArdle admitted that she was aware that Conner was being denied access to his prescribed medicated creams/lotion etc... See (Plaintiff's Request For Admissions-Response No. 13.) Further, Conner wrote McArdle several Health Service requestes starting from March 26, 2017, in which she doesn't disputes. See- McArdle's Responses to Plaintiff's (PFOF) 23-25.)

26.) - Ms. McArdle saw Mr. Conner again on February 14, 2017 and April 7, 2017 For issues unrelated to the claims asserted in this lawsuit. (McArdle Decl. Par. 12, Ex. A, P. 6, 8.) She also wrote orders For him on February 2, 9, and March 7, 2017, which were

also unrelated to the claims in this lawsuit. (McArdle Decl. Par. 12, Ex. A, P. 6, 8.)

Response: Disputes. Mr. Conner was sending McArdle several requests to be seen regarding his skin concerns. McArdle states that she handles inmates health care problems when an appointment is set scheduled with an APNP. (McArdle Decl. Par. 23.) (PPFOF Dkt# 32, Ex. 19, shows that Conner submitted a DOC-3035 Form to McArdle and Nurse Anderson responded on March 31, 2017, and that he was scheduled to be seen.

Furthermore, (PPFOF Dkt# 32 Ex. 20.) is the last documented Health Service Request Form to McArdle. Conner complained about his inability to shower etc.... The next day he seen McArdle on April 7, 2017. Mr. Conner never put in to see McArdle For body aches so why was he scheduled to see her if not for his multipal requests to for his skin and feet and keloids? McArdle admits that Conner was directing requests to see her for his medical conditions, and that the April 7, 2017, Appointment

(13)

Eastern District Of Wisconsin

was due to multipal requests to be seen by her. McArdle Response To Plaintiff's Request For admissions-Response No. 14, 15.

27.) ~ On those dates, Mr. Conner did not complain about not receiving his medicated creams or lotions, dry skin or feet, or his keloids on the back of his neck. (McArdle Decl. Par. 12, Ex. A, P. 6, 8.).

   Response : Disputes. Mr. Conner did Complained to Ms. McArdle on April 7, 2017, about his feet, skin, and keloids, shower/sleep deprivations; and requesting intentions into keloids, Orthepedic Shoes he was already prescribed, as well body aches from laying on Rubber mattress (hard) as well as the Observation trays. McArdle didn't document Conners Complaints/requests about his Feet, Skin, Keloids. (PPFOF Dkt#32, Par. 26; See Dkt#16. Par. 26 – 33.)

28.) ~ In the event Mr. Conner would have Complained about not having received his medicated creams or lotions, dry skin or feet

Eastern District Of Wisconsin

, or problems with keloids on the back of his neck, Ms. McArdle would have made a record of his complaint and any response to his complaint. (McArdle Decl. Par. 12, Ex. A, P. 6, 8.)

Response: Disputes. Ms. McArdle didn't document Conner's complaints about his keloids, dry skin and feet; and requests for keloid injections etc... (PPFOF Dkt. #52 Par. 26, Ex. #18; McArdle didn't document Mr. Conner's keloid and foot conditions at the February 14, 2017, appointment, which was the follow up treatment she scheduled for Conner's keloid, skin etc... On January 4, 2017. (McArdle Ex. A, P. 5.)

29.) - Mr. Conner did request "Cream for feet" at 8:30 p.m. during medical rounds on February 14, 2017 but there were no signs of injury or illness at the time. (McArdle Decl. Par. 5, Ex. A, P. 7, DOC 199.)

Response: No Dispute. Further adds that Conner was receiving his medicated creams and lotion for his skin, feet and keloids at that time, therefore, there was

(15)

no Complaints; whereas Conner wasn't allowed
access to his medicated creams and lotion
during his second Observation placement until
April 4, 2017. (McArdle Ex. A, P. 75-76)

30.) — On February 17, 2017, it was noted
that Mr. Conner was rubbing mineral cream
on the Camera. (McArdle Decl. Par. 5, Ex.
A, P. 12 - DOC 189.)
        Response : Disputes. Mr.
Conner never directely smear lotion/cream
on the Camera; Rather, Conner put some
a piece of toilet paper and affix it to the
Camera. (PPFOF. Dkt #32 Paragraph 2, Ex. 5)

31.) — On February 18, 2017, Mr. Conner
used cream and toilet paper to cover his
Observation Cell Camera. (ECF No. 33-1 at
P. 5.)
        Response : NO Dispute.

32.) — On February 23, 2017, Mr. Conner
was still at a risk of self-harm and asked
for a pen to kill himself and scratched
himself with a spoon the night prior. —

(Case No. 17-CV-0948)

Eastern District Of Wisconsin

(McArdle Decl. Par. 5, Ex. A, P. 20 - Doc Psych. 275.)

Response: No Dispute

33.) - Mr. Conner was provided with his Minerin Cream nine times and his Derma Daily lotion ten times in February 2017 while on Clinical Observation Status. (McArdle Decl. Par. 5, Ex. A, P. 4 - Doc. 345.)

Response: No Dispute

34.) - On February 24, 2017 at 6:50 p.m., Mr. Conner asked a nurse about his lotions. (McArdle Decl. Par. 5, Ex. A, P. 16 - Doc 197.)

Response: No Dispute

35.) - Mr. Conner was seen by nurse Kramer on February 25, 2017, where cream was applied to his feet. His feet were washed with Betasept, rinsed, and dried. Minerin cream was applied to both feet. His feet were very dry, but skin was intact. (McArdle Decl. Par. 5, Ex. A, P. 22 - Doc 036.)

Response: No Dispute, but

(17)

(McArdle exhibit. A, p. 22 - DOC 036.) actually
says, "Pt's feet were red, very dry, but skin
was intact.

36.) - On February 27, 2017, Mr. Conner
threatened to hang himself from a pull-up bar
if he was released from observation status.
Therefore, PSU determined that he would
not be provided with additional property for
his own safety. (McArdle Decl. Par. 5, Ex.
A, p. 24-25 - DOC Psych 278-79.)
        Response: No Dispute

37.) - Mr. Conner was released from obser-
vation status on March 2, 2017 because he
was cooperative with PSU staff and did not
endorse any current intent to harm himself.
(McArdle Decl. Par. 5, Ex. A, p. 28 - DOC Psych
281.)
        Response: No Dispute.

38.) - While on Clinical Observation status
from February 13 to March 2, 2017, the
records reflect that during medical rounds,
Mr. Conner did not make any complaints,

Other than about his Minerin cream on
February 17, 2017, and did not show signs
of injury or illness. (McArdle Decl. Par. 5,
Ex. A, P. 7, 12, 14, & 16 - Doc 189, 197 - 199.)

Response: No Dispute, but adds
that on February 14, 2017, Conner requested
injections into his Keloids at the appoint-
ment with Ms. McArdle who didn't docu-
ment Conner's request For injections.
(McArdle Ex. A, P. 5.)

39.) - On March 3, 2017, Mr. Conner was
Placed back on Clinical observation Status by
Dr. Stacy L. Hoem because he attempted to
hang himself with a towel that he Kept
and hidden. (ECF No. 33-1 at p. 2; Hoem
Decl. Par. 5.)
    Response: No Dispute as to
When and who placed Conner on Observation
Status on March 3, 2017. Disputes that
he used a towel, it was a bed-sheet in-
stead.

40.) - On March 3, 2017, Mr. Conner
was initially only allowed to have a Seg-

Eastern District Of Wisconsin

regation mattress (approximately one inch
thick rubber mattress), toilet paper, and
Styromeals (all meals served in cell on a Styro-
Foam tray without utensils). He had a history
of self-harming behaviors prior to this plac-
ement, including attempts at hanging himself,
so Dr. Hoem did not want him to have a
segregation smock right away as that material
could be used in another hanging attempt.
(Hoem Decl. Par. 9.)

      Response: No Dispute, but
adding that Mr. Conner was self-harming
and making threats of self-harm with
his smock at least 3-4 times while on
Clinical Observation Status after March
3, 2017; in which it was kept being returned
to Conner after it was removed. (Hoem
Decl. Paragraph. 15.)


41.) — It was noted on March 3, 2017 that
Mr. Conner was not allowed creams or lotions.
(ECF No. 33-1 at par. 8.)
      Response: No Dispute


42.) — Dr. Hoem was informed that Mr.

## Eastern District Of Wisconsin

Conner brought up the issue of needing his creams and lotions at some point shortly after he was placed on Clinical Observation status. However, Mr. Conner refused to talk to PSU about this issue, but would later tell unit staff that he was supposed to get his creams in his cell, at which point Dr. Hoem placed a handwritten note on his cell front stating that he should not be given his creams and lotions in his cell, as it was not approved property. (Hoem Decl. Par. 12.)

Response: Disputes. First, Conner never refused to talk to Dr. Hoem about this issue; Conner did inform her. (PPFOF. Par. 10,11.) Second, Dr. Hoem already was aware that Conner was prescribed and needed the creams and lotion from dealing with his creams and lotion incidents during his 2-13-17 to 3-2-17, Observation Placement. (PPFOF at Par. 2,7.) Third, Mr. Conner never asked unit staff to possess the creams. Dr. Hoem placed the handwritten restriction/note on Conner's door within 10-15 minutes after Conner's Observation Placement on March 3, 2017; therefor it

wasn't later that she placed the note. Fourth, Mr. Conner's argument has never been that he wanted to have the actual containers of his creams and lotion in-cell, rather be allowed access to them during medication pass-out times while tether to his cell-door and or pulled out-of-cell for treatment, like he was receiving during his first observation placement. (PPFOF. Par. 3, 4, 5)

43.) – Dr. Hoem put the restriction on his cell because she did not want security staff or the unit manager allowing him to possess his creams and lotions while in observation status should he ask for them. Mr. Conner had a history of refusing to speak with PSU staff, but would then talk to security and unit staff seeking more property. This restriction was put in place for his own safety, as Dr. Hoem was aware that he had previously used his creams/lotions to cover the camera in his cell. (Hoem Decl. Par. 13.)

Response: Disputes. First, as stated in response to (DPFOF No. 42) above, Mr. Conner never wanted to possess the actual containers

(22)

(Case No. 17-CV-0948)

## Eastern District of Wisconsin

In his observation cell. Secondly, the restri-
ction was not put in place for Conner's own
safety. This makes no sense. During Mr.
Conner's First observation placement in
February 2017, Conner abused his creams
and lotion twice on 2-17-17 and 2-18-17. Then
on 2-23-17, made threats of self-harm, and
self-harmed the night prior with a spoon.
(DPFOF Par.. 30, 31, 32.) Third, Mr. Conner
was still receiving access to his creams and
lotion after the abuse of them and self-
harm and threats. (PPFOF Par.. 2-5.) Fourth,
Dr. Hoem was aware of Conner's medication
abuse and self-harm attemp / threats in
February 2017, yet she continued to allow
Conner access to his medicated creams and
lotion by alternative means; and never placed
a restriction on Conner's cell door or out-
right deny Conner access to his prescribed
medicated creams / lotion. Fifth, there
was no reason why Dr. Hoem then would
deny Conner access to his creams and lotion
even by alternative means; because she
allowed him access in 2017, February.
(PPFOF Par.. 2-5). Conner never used his

(23)

Eastern District of Wisconsin.

medicated creams / lotion for self-harm while in Clinical Observation Status in Feb. of 2017.

44.) - Covering a Camera is a serious security risk as staff are unable to observe what is happening inside the cell. The primary purpose of Observation Status is to closely monitor the inmates so they are not engaging in self harming behaviors. Covering their Camera impedes Staff's ability to monitor them and ensure their safety. (Hoem Decl. Par. 14.)

Response: No Dispute as to the primary purpose of Observation Status. Plaintiff Disputes that Covering one's Camera impedes Staffs ability to monitor and ensure inmates safety: "Inmates in Observation Status are checked on by unit Staff every 15 minutes throughout the day and night. Psychological Services unit (PSU) Staff also conduct daily rounds of inmates on Observation Status." (Hoem Decl. Par. 6.) As in Conner's Case.

45.) - On March 15, 2017, Mr. Conner

Eastern District Of Wisconsin

Spoke to Nurse Bethel and informed him about his feet being dried and cracked and about how Mr. Conner was not allowed to have his creams or lotions while in Clinical Observation. Nurse Bethel encourage him to get off Clinical Observation, and then came back later that day and soaked Mr. Conner's feet in epsom salt and warm water for five minutes. Then, Nurse Bethel dried his feet and applied minerin cream. (McArdle Decl. Par.. 5, Ex. A, P. 43 - Doc 032.)

Response: No Dispute, but add that Mr. Conner also spoke to Nurse Bethel several times before March 15, 2017: First, on March 3, 2017, ask for his cream and lotion and that they are a necessity to his treatment and the adverse affects if not given his creams and lotion. (SCC Dkt # 16 at Par.. 12 - 14.). Second, on March 11, 2017, at cell front again complaing about his feet, keloids, and skin and requesting creams and lotion. (PPFOF Dkt # 32 at Par. 15, Ex. # 9.) Third, on March 12, 2017, at cell-front where Conner showed Nurse Bethel

the Conditions of his feet, skin, and Keloids. Conner requested out-of-cell treatment, etc.... (PPFOF. Dkt #32. Par. 16, Ex #9; SCC. Dkt #16. Par. 12-14.) Fourthly, On March 19, 2017, Conner spoke to Nurse Bethel at Cell-Front about his Shower and sleep deprivations; Painful Keloids; requested Skin lotion. (PPFOF. Dkt # 32. Par. 21, Ex #10.)

46.) - On March 16, 17, and 19, 2017, Mr. Conner refused his daily foot care. (McArdle Decl. Par. 5, Ex. A, P. 45-46 - DOC 031, 236.)

     Response : No Dispute as to the records. However, Plaintiff adds that he refused due to the Cream coming off onto the Cold Cement floor in his cell; Due to not having Shoes, socks, sandles, etc... to wear after Cream was applied; being forced to walk bare-foot on Cold Cement floor 24 hrs. a day. (Mc-Ardle Decl. Par. 5, Ex. A, P. 45, Entry date 3-17-17.)

47.) - On March 20, 2017, Mr. Conner again attempted Self-harm by put-ting a ⟶

(26)

bag over his head, and for that reason, he was unable to come out of his cell for his daily foot care. (McArdle Decl. Par. 5, Ex. A, P. 45 - Doc 031.)

Response: No Dispute as to the self-harm attempt with the unauthorized plastic bag. Plaintiff, however, disputes that this incident impeded HSU staffs ability to provide Plaintiff with foot care treatment that day. The plastic bag incident took place at 0755 hrs. a.m., and Mr. Conner was immediately placed back into his cell after cell was searched for more authorize property. Therefor, HSU staff would have all the rest of the day to provide Conner with out of-cell footcare. (McArdle Ex. A, P. 45.)

48.) — Mr. Conner was provided with daily foot care on March 21, 25, and 31, 2017, but refused it on March 22, 23, 24, 26, 2017 as well as April 3, 2017. (McArdle Decl. Par. 5, Ex. A, P. 52, 70 - Doc. 029, 30.)

Response: No Dispute - see (response to DPFOF No. 46.)

Eastern District of Wisconsin

49.) - On April 4, 2017, PSU determined, after consulting with Ms. Jolinda Waterman and Rubin-Asch, Mr. Conner could have his foot lotion in his cell. They explained that it could only be used for his feet and that if the lotion was misused, it would again be restricted while in clinical observation. One reason this determination was made was because Mr. Conner was exposing himself to female nurses while nursing staff were applying the lotion to his feet. (McArdle Decl. Par. 5, Ex. A, P. 75-76 - DOC Psych 245-296.)

Response: No Dispute as to what Exhibits 75-76 States. Objects to the Phrase, "It would again be restricted". It is misleading. Plaintiff Disputes the rest for the following reasons: First, Conner only abused his cream on February 17, 18, 2017, by covering his camera with tissue. (PPFOF. Dkt. # 32, Par. 1, 2, Ex. # 1, 5.) However, Dr. Hoem or Ms. Mink never restricted Conner access to these creams-lotion. In fact, Mr. Conner was still receiving these creams, and lotion on and after he abused it. (PPFOF. Dkt. # 32. Par. 3, 4, 5.) Secondly,

Eastern District Of Wisconsin

Dr. Hoem's reasons as to why she denied Conner access to his creams and lotion are: 1.) Because Conner covered his camera with cream; 2.) For his own saftey due to his history of self-harm. (Hoem Decl. Par. 12, 13.). This makes no sense whatsoever. Dr. Hoem allowed Conner to still possess his creams and lotion during his first observation placement after he abused them; and never denied nor placed a restriction on Conner. Furthermore, her actions and the record then shows that she wasn't worried that Conner will self-harm with his creams and lotion after abusing them and after his threat of self-harm and self-harm attempt with a spoon. (DPFOF par. 32.) Third, as to the reason Dr. Rubin-Asch and Ms. Waterman gave Conner access to his creams and lotion will be explained below.

50.) - Specifically, Mr. Conner recently exposed himself to the nurse performing foot care on March 31, 2017. (McArdle Decl. Par. 5, Ex. A, P. 70 - Doc 029.)

(29)

(Case No. 17-CV-0948)

Eastern District Of Wisconsin

Response : No Dispute as to what (McArdle's Ex. A, P. 70) States. Further, Plaintiff Disputes that he intentionally exposed himself. McArdle's Ex A, 70, doesn't State that Conner pulled-out his penis and showed the nurse. Conner was just sitting down receiving footcare and the nurse, just happened to look between Conner's legs and observed his genitals. Conner didn't have on underwear just a smock like the nurse Stated, because Conner (inmates) aren't allowed them in observation Status. This is what Conner was being argumentative about as the nurse stated.

(McArdle's Ex. A, P. 70) dosn't state that Mr. Conner was masterbating to her or pull out his penis. The defendants in this case has not produced any documented testimony from the female nurses who provided footcare to Mr. Conner in March of 2017, that states he was masterbating to them while receiving Footcare from them; but Dr. Rubin-Asch swore this in his Decl. Par. 10.) Lastly, Rubin-Asch, Hoem or Mink, never

(30)

Eastern District OF Wisconsin

evaluated/assessed Mr. Conner to determine
if he could use the creams and lotion for
self-harm attempts as Hoem states in
her declaration par... 7, 11.)

51.) — Ms. McArdle saw Mr. Conner on April
7, 2017. For complaints of generalized body
aches. Mr. Conner was also concern that the
trays he was receiving in Clinical observation
were lower in calories than the regular
trays. Ms. McArdle recommended use of
ibuprofen or lidocaine cream as needed for
complaints of generalized body aches. Ms.
McArdle planned to check on the calories
being provided in Clinical observation trays
versus regular meal trays because Mr.
Conner's weight was 11 pounds less than
what it was in January 2017. However,
Mr. Conner was not overweight. His body
mass index was 30. She later determined
that about the same amount of calories
are provided, but different meals are provided
as the inmate is not able to use utensils
to eat the food to prevent of self-harm.
(McArdle Decl. Par.. 5, Ex. A, P. 70.)

(31)

Eastern District Of Wisconsin

Response : No Dispute as to what McArdle's Ex. A, P. 70) States. Plaintiff Disputes that he ever wrote Ms. McArdle about generalized body aches. The record clearly shows Conner requesting his lotions, Complaining about not being able to Shower, and one request Dated March 30, 2017 about weight loss since Observation placement. (PPFOF Dkt. # 52, Ex... 19, 20, 24.) Therefor, the April 7, 2017, appointment was not for Complaints of generalized body aches.

52.) - On that date, Mr. Conner did not Complain about having pain in his Feet, dry or Cracked Skin, or problems with keloids on the back of his neck. (McArdle Decl. Par.. 5, Ex. A. P. 70.)

Response: Plaintiff Disputes this proposed Fact For the Following Reasons: First, Mr. Conner was requesting to see Ms. McArdle regarding his creams and lotion and Shower deprivation. The last documented Health service Request to Ms. McArdle was dated April 6, 2017, one day before She Seen Conner on April 7, 2017. Secondly, Dr. Hoem, Mink, Rubin-Asch,

## Eastern District Of Wisconsin

Waterman, and Bethel don't dispute that
Conner Complained about his pain and
discomfort regarding his keloids and dry
skin. That Ms. McArdle refused to not only
provide Mr. Conner with medical treatment,
but refused to document his requests and
Complaints about his feet, skin, and keloids
on April 7, 2017, appointment. See Their
response to PPFOF at Par. 26.); (PPFOF
Dkt. # 32 at Par. 26.)


53.) – In the event Mr. Conner would
have complained about having pain in his
feet, dry skin, or problems with keloids on
the back of his neck, Ms. McArdle would
have made a record of his complaint and any
response to his complaint. (McArdle Decl. Par.
15, Ex. A, P. 70.)

   Response: Disputes. For the
reasons Conner listed above in response
to No. 52. Furthermore, Ms. McArdle forgot
to document feet, dry skin and keloid conditions
at the February 14, 2017 follow up appoint-
ment that she herself stated documented and
scheduled on January 4, 2017 at 1330 hrs.

Eastern District OF Wisconsin

(McArdle Ex. A, P. 5.)

54.) - On April 7, 2017, Mr. Conner did not present with a serious, urgent, or emergent need. (McArdle Decl. Par. 15, Ex. A, P. 70.)

    Response: Disputes for the reasons set forth in Response to No. 52. above.

55.) - On April 20, 2017, Mr. Conner was removed from clinical observation status as he was refusing to communicate with PSU staff and had not demonstrated or reported suicidal ideation for several days. (McArdle Decl. Par. 5, Ex. A, P. 96 - DOC Psych 262.)

    Response: Plaintiff objects to this proposed fact on the grounds that it is not relevant to the issues related to Ms. McArdle and her deliberate indifference to Conner's medical needs. Furthermore, it deals with another pending current lawsuit Case No. 17-CV-1388. In the event a response is needed, Conner Disputes.

56.) - Mr. Conner was placed on clinical

Eastern District Of Wisconsin

Observation Status again on April 21, 2017 because he attempted self-harm by tying clothes around his neck. Shortly thereafter, on April 26, 2017, Mr. Conner again covered the camera with toilet paper so that staff could not monitor his behavior. (McArdle Del. Par. 5, A P. 98, 102 - DOC Psych 217, 220

Response: Plaintiff Objects to the above proposed fact for the same reasons he listed in his response to No. 55 above. In the event that a response is needed, Mr. Conner objects and disputes. Furthermore, Mr. Conner was placed on Clinical observation on April 20, 2017, at 8:00 p.m.; and not on April 21, 2017 as McArdle claims in her declaration. (McArdle's Ex. A, P. 98.) Clearly Shows: Date Of Placement 4-20-17 8:00 p.m.

57.) — Mr. Conner was then released from Clinical observation status on April 27, 2017 because he did not have thoughts of self-harm. (McArdle Decl. Par. 5, Ex. A, P. 103 - DOC Psych 221.)

Response: NO Dispute.

(Case No. 17-CV-0948)

Eastern District Of Wisconsin

58.) - While on observation status From
March 3 to April 27, 2017, the records
reflect that during medical rounds, Mr.
Conner did not make any complaints, other
than on April 8, 2017 about correctional
officers passing out medication and on
April 23, 2017 about not having a wash-
cloth or soap, and Mr. Conner did not show
signs of injury or illness. (McArdle Decl.
Par. 5, Ex. A, P. 31, 37, 39, 48, 54, 60, 79, 86,
92, and 101- Doc 185-194, 196.)

   Response: Disputes. Conner complained
to Nurse Bethel at cell-front and at HSU
Station; complained to Ms. Waterman at
cell front; complained to Dr. Rubin-Asch
through correspondences; complained to
Ms. McArdle & Waterman through correspond-
ences, and at appointment on April 7, 2017.
(PPFOF. Dkt # 52 at par... 8, 15, 16, 17, 19, 21,
22, 23, 24, 25, 26, 46, 47.)

59.) - The next time Ms. McArdle saw Mr.
Conner was on June 7, 2017, when he requested
a basin to soak his feet. Ms. McArdle provided
him with the basin to soak his feet and presc-

(36)

rubbed a pumice stone as needed. (McArdle Decl. Par. 19.)

Response: NO Dispute.

(60.) — Ms. McArdle did not have authority to provide Mr. Conner with access to any medicated creams or lotions while he was on clinical observation status. Ms. McArdle further did not see or treat Mr. Conner while he was on clinical observation status, other than on February 14, 2017 and April 7, 2017 for issues unrelated to the claims made in this action. (McArdle Decl. Pars. 12, 23.)

Response: Disputes. Mr. Conner never wanted the actual creams and lotion containers in cell, rather provided with out-of-cell treatment for his feet, skin, and keloids. (PPFOF Dkt.#32 at Par. 41.) Therefore, McArdle could've authorize out of cell treatment for Conner. Further, the April 7, 2017 appointment was in response to the multipal requests to see her for out of cell skin treatment. (PPFOF. Exhibits.# 19, 20, 24.) Furtemore, Ms.

(37)

Eastern District Of Wisconsin

McArdle admitted that it was scheduled due to the mulitpal requests. See (Plaintiff's request For Admissions-response to request No. 15.)

61.) - Ms. McArdle has the proper training, education, and experience to provide APNP care to WSPF inmates, including Mr Conner. (McArdle Decl. Par..4.)
    Response: No Dispute

62.) - Ms. McArdle does not have authority in her role as a nurse practitioner at WSPF to provide personal property to an inmate on Clinical Observation status or to reverse a restriction of the personal possession of medication, medicated creams and lotions, or any personal property for that matter, for an inmate on Clinical Observation Status. Psychological Services unit, or PSU and Security has the authority regarding personal property possessions while in Clinical Observation Status. (McArdle Decl. Par..9.)
    Response: Disputes. First, Ms. McArdle is a licensed RN and APNP.

Eastern District of Wisconsin.

(McArdle's PFOF No. 9) On January 4, 2017, Ms. McArdle Diagnosed Mr. Conner with dry Skin, Feet and Keloids. (PFOF No.. 12, 16.) She prescribed Conner medicated creams, Pumice Stone and reccommended injections to manage Conner's Keloids. (PFOF No. 17.) Ms. McArdle admitted Several things: 1.) that she has the training in treating Skin conditions, including dryness and Keloids (Plaintiff's Request For admissions - Response No. 1; 2.) That Mr. Conner was already diagnosed with Dry Skin, Feet and Keloids, as well as prescribed medicated creams and lotion as well as injections For Keloids before he arrived to WSPF From WCI. See - (Plaintiff's Request For Admissions - ("PRFA) - Response No. 8.); 3.) That she was aware that Conner went on Clinical Observation on March 3, 2017, and the property Conner was and wasn't authorized. See - (PRFA) - Response No. 5.); 4.) That she was aware of Conner being denied access to the prescribed medic- ated creams and lotion she prescribed. (PRFA : Reponse No. 13.); 5.) That she was aware of the multipal requests to see her about out-of-cell treatment (Skin) and being unable

## Eastern District of Wisconsin

to Shearer was being directed to her. (PREA.
Response No. 14.) Therefor, Ms. McArdle could've
authorized out-of-cell Feet, Skin, and keloid
treatment For Conner.

63.) – Ms. McArdle was never informed or
aware that Mr. Conner was suffering from
excessive Pain or bleeding From his Feet or
Keloids. (McArdle Decl. Par. 25.)

    Response: Dispute. All HSU Staff:
HSU Manager; Register Nurses; and Providers
all Consult with each other regarding inmates
medical needs, treatment, and medications.
By her own admissions, she knew Conner
was placed on clinical observation; that Dr.
Hoem was denying him access to medications
she prescribed; that Mr. Conner was requesting
to see her by Health Service Requestes Forms;
that she has training, education, and experence
in treating Skin conditions and Keloids, therefor
she was Fully aware of the adverse effects
if his Skin, Feet, and Keloids go untreated,
treatment is denied, denied. See-(PREA.
Responses No... 1, 9, 10, 13, 14, 5.).

(40)

Eastern District Of Wisconsin

64.) — When the Health Service Unit ("HSU") receives Health Service Requests ("HSR") From Inmates, nurses will triage and determine whether the nurse can handle, whether Ms. McArdle as the APNP Should handle, or whether the HSU Manager, Jolinda Waterman, Should handled. Just because the HSR is addressed to Ms. Mc-Ardle, does not mean that She is aware of it or reviewed it. (McArdle Decl. Par. 21.)

Response: Plaintiff Objects to this proposed Fact on the grounds that it is "ambiguous" and is not Supported by any DAI policy# nor has Ms. McArdle presented one or referred to one. In the event a response is required, the Plaintiff Disputes.

65.) — Ms. McArdle did not respond to any of the HSR's Mr. Conner addressed to her While he was in Clinical observation Status From February 2017 to April 2017, as other nurses and Jolinda Waterman responded and were Included in his Exhibits In Support of Summary Judgment. (ECF No. 33-1, p.

19, 20, 24, 25.)

Response: No Dispute as Ms. McArdle not responding in writing to Mr. Conner's HSR's; however, she did respond by scheduling and holding the April 7, 2018 appointment in response to Conner's HSR's. (PPFOF. Dkt #32 at par. 23-26.; SCC. Dkt. #16 at par. 26.).

66.) - Conner's dry, cracking and peeling skin on his feet was not considered a serious medical need, as the medication lotions and creams had been prescribed only as needed. (Waterman Decl. Par. 11.)

Response: Disputes. Dry, cracking and peeling skin turns into cuts that bleeds and causes extreme pain and makes it difficult to not only walk, but step and shower as well, like it did Conner. Therefore, it is "serious" medical need. (PPFOF. Dkt #32 at par. 17, 18; SCC. Dkt. #16 at par. 15-17, 19.)

67.) - Based upon Ms. McArdle's professional judgment and expertise, and to a reasonable degree of medical certainty, Mr. Conner has

been and continues to be provided with
appropriate medical care and has not been
denied medical care or accommodations
resulting in injury or pain. (McArdle Decl
. Par. 27.)

Response: Plaintiff Objects to this
proposed statement on the grounds that it
is a legal argument rather than a proposed
Fact. In the event Mr. Conner is required
to respond to the above statement, Mr.
Conner Objects and disputes.


Dated this 26th day of August, 2018.

Respectfully,

Eric D. Conner
#420475
Pro Se - Litigant.

Wisconsin Secure Program Facility
(WSPF)
P.O. Box 1000
Boscobel, WI 53805-1000
(608) 375-5656          (Case No: 2:17-cv-00948)

(43)